IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re<br><br>LTC HOLDINGS, INC., *et al.*,[1]<br><br>Debtors. | Chapter 7<br><br>Case No. 14-11111 (CSS)<br>(Jointly Administered) |
| ALFRED T. GIULIANO, CHAPTER 7 TRUSTEE,<br><br>Plaintiff,<br><br>v.<br><br>AVINASH N. RACHMALE,<br><br>Defendant. | Adv. No. |

## COMPLAINT FOR INJUNCTIVE RELIEF

Alfred T. Giuliano (the "Trustee" or "Plaintiff"), the chapter 7 trustee for the estates of LTC Holdings, Inc. *et al.* ("Debtors"), by and through his counsel, Fox Rothschild LLP, brings this adversary proceeding against Avinash Rachmale ("Rachmale" or "Defendant"), seeking entry of an order (I) enforcing the automatic stay against the Defendant; and (2) for injunctive and other equitable relief pursuant to 11 U.S.C § 105 and Fed. R. Bankr. P. 7001 and 7065, to enjoin Rachmale's filing of, and continued pursuit of a lawsuit against certain former officers

---

[1] The Debtors in these cases, along with the last four digits of their federal tax identification numbers are (i) LTC Holdings, Inc. (3283) (Case No. 14-11111); (ii) LTCCORP, Inc. (1361) (Case No. 14-11112); (iii) LTCCORP Government Services, Inc. a/k/a Lakeshore Toltest Corporation; LTC (2894) (Case No. 14-11113); (iv) LTCCORP Government Services-MI, Inc. a/k/a Lakeshore Engineering Services, Inc.; Lakeshore Group; LTC Corp Michigan; LTC Michigan (8977) (Case No. 14-11115); (v) LTCCORP Government Services-OH, Inc. a/k/a TolTest, Inc.; LTC; LTC Ohio; LTC Corp; LTC Corp Ohio (1985) (Case No. 14-11116); and (vi) LTCCORP E&C Inc. (6406) (Case No. 14-11117).

and directors of the Debtors (including Eugene P. Conese, Jr., Joseph A. Saldutti, Jr., Grant G. McCullagh, Jeff R. Miller, Thomas D. Stocks, and Marc C. Bergschneider), as well as certain private equity entities who invested in the Debtors (including Gridiron LTC Investment, LLC, Gridiron Capital Fund, L.P., Gridiron Strategic Advisors Fund, L.P., Gridiron Co-Investors, LLC, Starboard – LTC, LLC, Gridiron Capital, LLC and Starboard Capital Partners, LLC). In support thereof, the Trustee states as follows:

## INTRODUCTION

The instant complaint seeks to enforce the automatic stay and requests injunctive relief in order to prevent Rachmale (the majority common shareholder and the former Chief Executive Officer and Chairman of the Board of Directors of the Debtors), from continuing his effort to exercise control over property of the estate by attempting to litigate claims which are owned by the estate, and which may be exclusively asserted by the Trustee. Rachmale is the founder of the Debtors, companies which, at the time of the chapter 7 filing, provided engineering and construction services worldwide to municipal, commercial and governmental entities, including various United States agencies.

In or about 2011, Rachmale negotiated with two private equity firms known as Gridiron Capital, LLC and Starboard Capital Partners, LLC (together, the "Investors") for an equity investment of approximately $50 million. As a result of a series of transactions and agreements executed in connection with the equity investment, the Investors received certain preferred stock, were designated a number of seats on the Board of Directors of the Debtors, and, upon the occurrence of certain so-called "triggering events" (which included reductions in EBITDA and/or contract revenues, among other things) became entitled to designate all members of the Board.

2

Beginning in 2011 through 2012, the Debtors began experiencing difficulties executing various projects, which led to delayed and decreased cash flow and financial difficulties. The financial difficulties apparently continued through 2013 such that in or about May 2013, the Investors preferred stockholders claimed that "triggering events" had occurred and exercised their rights to replace members of the Board of Directors.

The Debtors financial condition continued to deteriorate through 2014 and, in April 2014, Rachmale resigned from the Debtors' Board of Directors. Shortly thereafter, Rachmale filed a complaint in Michigan state court against the directors of the Debtors as well as several Investor entities (the "Michigan Action") which, in sum and substance, claims the Investors preferred stockholders, through their designated board members, breached their fiduciary duty by improperly removing directors and replacing them with new directors beholden to the Investor entities, usurping, diminishing and eventually eliminating Rachmale's authority, and generally mismanaging the Debtors' business, all of which, in Rachmale's words, brought "LTC to the brink of financial ruin."

Rachmale initiated his lawsuit pre-petition and, upon the filing of the LTC bankruptcy, the defendants removed the complaint to the United States Bankruptcy Court for the Eastern District of Michigan, Southern Division, and filed a motion to dismiss and a motion to transfer venue to this Court. Rachmale filed a motion to remand. The Michigan Bankruptcy Court granted the motion to remand, but in doing so, noted that Rachmale had agreed to dismiss all claims in the complaint "which seek only relief on his behalf – not LTC's – so as not to invade the trustee's province." See Order on Remand, n. 6, attached as Exhibit "A" hereto. More specifically, Rachmale agreed to dismiss his claims for (1) breach of contract and (2) breach of good faith and fair dealing directly involving LTC, and to "amend his Complaint, upon remand,

3

to remove all language seeking damages for harm to LTC; any damages must be limited to those Rachmale personally and distinctly experienced." Id. at p. 12.

Upon remand to the Michigan state court, Rachmale filed an 8-count First Amended Complaint. See First Amended Complaint attached as Exhibit "B". However, despite how they are styled, the claims overwhelmingly assert injury common to all creditors as well as shareholders, and not injury that he "personally and distinctly experienced." Accordingly, and as acknowledged by the Michigan Bankruptcy Court, those claims "invade the trustee's province", are property of the Debtors' estate under Section 541 of the Bankruptcy Code and may be solely brought by the Trustee. Therefore, because Rachmale is attempting to exercise control over property of the estate, and/or is asserting claims against the Debtors, the Trustee seeks to enforce the Automatic Stay in Section 362 of the Bankruptcy Code by requiring that Rachmale be enjoined from proceeding with the Michigan Action.

## JURISDICTION

1. The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (E), and (O).

2. Venue of the Debtors' bankruptcy cases and this adversary proceeding is proper in this district pursuant to 28 U.S.C. §§1408 and 1409.

3. The statutory predicates for the relief requested herein are 11 U.S.C. §§ 105(a), 362(a), and Fed. R. Bankr. P. 7001 and 7065.

## PARTIES

4. Plaintiff is Alfred T. Giuliano, the chapter 7 Trustee for the Debtors' estates. Mr. Giuliano conducts business at Berlin Business Park, 140 Bradford Drive, West Berlin, NJ 08091

4

5. Defendant is Avinash Rachmale, a resident of the State of Michigan, with an address at 160 Canterbury Road, Bloomfield Hills, MI 48304

## STATEMENT OF FACTS

**A.    Background of the Debtors' Bankruptcy Filing**

6. On May 2, 2014 (the "Petition Date"), Debtors filed voluntary petitions for relief under chapter 7 of Title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code").

7. On May 2, 2014, Office of the United States Trustee appointed the Trustee as chapter 7 trustee, which appointment remains in effect.

8. On May 14, 2014, the Court issued an Order authorizing the joint administration of the Debtors' estates. [D.I. 17].

**B.    The Debtors**

9. According to the allegations in the Michigan Action, Rachmale "is a self-made man" who, in 1994, formed a company called Lakeshore Engineering Services, Inc. ("Lakeshore"), an engineering firm engaged in environmental assessment and remediation. *See* Michigan Action First Amended Complaint at ¶ 30 (Exhibit "B").

10. By 2009, according to the allegations in the Michigan Action, Lakeshore had grown into a company with over 100 employees, highly profitable government contracts, and annual revenues of $250 million. *Id.* at ¶ 34.

11. In 2010, Rachmale caused Lakeshore to acquire Toltest, Inc., an engineering and construction firm, and merged the two companies into Lakeshare Toltest Corporation, later LTCCORP Government Services, Inc. ("LTC"). As a result of the merger, LTC's revenues allegedly increased to over $600 million in 2010. *Id.* at ¶¶ 37-39.

12. In 2011, Rachmale was allegedly induced into selling 35% of his shares in LTC to Gridiron Capital, through an entity called Gridiron LTC (collectively, "the Investors"). *Id.* at ¶ 43. According to the Investors, Rachmale pocketed over $35 million in the transaction.

13. In connection with the equity investment, the Investors allegedly assured Rachmale that they had significant experience running and managing companies such as LTC and that, eventually, they would take the company public and increase its value 4 to 5 times, making it among the largest in its field. *Id.* at ¶ 46. The Investors allegedly further represented that Rachmale would be "deeply involved" in managing the affairs of LTC and would select one half of the directors, with the Investors selecting the other half of the directors. *Id.*

14. Thereafter, the Investors and Rachmale executed a Stock Purchase Agreement and Stockholders Agreement, whereby, among other things, (a) the Investor entity became the holder of certain preferred shares of the Debtors' stock, (b) the preferred shareholders and the common stock shareholders (of which Rachmale held the majority) each designated three members of the Board of Directors, and (c) if a "Triggering Event" occurred (which included a decrease in EBITDA and/or contract revenues below certain levels), the preferred shareholders were authorized to designate all members of the Board of Directors.

15. Beginning after the closing on the equity infusion by the Investors in 2011 and continuing through 2012, the Debtor began experiencing problems with various projects and its financial condition started to deteriorate. According to pleadings filed by the defendants in the Michigan Action, the Debtor went from having approximately $54 million in net cash following the investment in 2011 and a net overbilled position, to having a net under-billed position and $13 million in net cash in 2012.

6

C. **Rachmale Contends the Investors Forced him Out and Destroyed LTC**

16. Rachmale contends in the Michigan Action that shortly after the equity transaction described above closed, the Investor board members "quickly took advantage of Rachmale's minority status and engineered a complete takeover of LTC for their own benefit. *Id* at ¶ 47.

17. Rachmale contends in the Michigan Action that the Messrs. Conese, Sladutti, McCullagh and Stocks, as board members, assumed total domination and control of the Debtors, and thereafter decreased and eventually eliminated Rachmale's authority, and mismanaged the Debtors, leading to their eventual demise. Among other things, Rachmale alleges that the Investor board members:

   a. Appointed Jeff R. Miller as CFO and treasurer of LTC, who thereafter refused to take direction from Rachmale and, instead, took his direction from the directors appointed by the Investor entities (*Id.* at ¶ 50)

   b. Replaced Rachmale as CEO with Grant McCullagh, thereby moving Rachmale out of his officer position and positioned Mr. McCullagh to work solely with the Investor board members (*Id.* at ¶ 51);

   c. Removed Rachmale from his management and officer roles and from the Debtors' affairs (*Id.* at ¶ 52);

   d. Recklessly and illegally operated LTC (*Id.* at ¶ 77)

   e. Failed to provide accurate financial and accounting oversight for numerous projects (*Id.* at ¶ 77(a));

   f. Failed to renew a business license in the United Arab Emirates in the name of Lakeshore Equipment and Logistics, Inc., an LTC affiliate (*Id.* at ¶ 105, 106);

7

g. Failed to appropriately staff and manage projects (*Id.* at ¶ 77(b));

h. Failed to employ knowledgeable and competent management (*Id.* at ¶ 77(c));

i. Removed all persons of Indian descent from management positions (*Id.* at ¶ 53));

j. Eliminated strategic goals by recklessly pulling out of projects (*Id.* at ¶ 77(f));

k. Fraudulently used payments received from various jobs for purposes other than paying obligations incurred on such jobs (*Id.* at ¶ 77(i));

l. Made false reports to the government (*Id.* at ¶ 77(j));

m. Double pledged assets as security to financial institutions (*Id.* at ¶ 77(m));

n. Committed trust fund violations (*Id.* at ¶ 77(n));

o. Misrepresented financial information to financial institutions (*Id.* at ¶ 77(o)).

18. According to Rachmale, as a result of the wrongful conduct perpetrated by the Investor directors, the U.S. Department of Justice is investigating the Debtors.[2]

19. According to the Michigan Action First Amended Complaint, the Investors defrauded Rachmale out of the value of his stock. *Id.* at ¶ 79.

20. The Investors also allegedly failed to provide certain information to Rachmale regarding the status of certain bonded projects and failed to reduce his personal liability under those bonds. *Id.* at ¶¶ 91-94.

21. Rachmale also alleges that the Investors further diminished his stock interest in LTC by reneging on an agreement to permit Rachmale, through a separate company (Lakeshore Global) to acquire a portfolio of Detroit municipal contracts. *Id.* at ¶ 98-100.

---

[2] The defendants in the Michigan Action have filed papers indicating that they believe the Department of Justice investigation stems from conduct which occurred prior to the Investor entities involvement with the Debtors.

D. **The Defendant Files the Michigan Action**

22. In April 2014, Rachmale resigned from the Debtors' Board of Directors. Shortly thereafter, he filed the Michigan Action in Michigan state court against the Investor Directors, certain of the Debtors' officers, and several Investor entities.

23. Following the Debtors filing of the voluntary chapter 7 petitions, the defendants in the Michigan Action filed a notice of removal under 28 U.S.C. § 1452, removing the case to the United States Bankruptcy Court for the Eastern District of Michigan, Southern Division, at Adv. No. 14-04532 (MAR).

24. On May 30, 2014, the defendants in the Michigan Action filed a motion to transfer the case to this Court.

25. On June 30, 2014, Rachmale filed a motion to remand the Michigan Action.

26. On August 18, 2014, the Michigan Bankruptcy Court granted the motion to remand and denied the motion to transfer as moot. *See* Order, Ex. "A".

27. In its ruling, the Michigan Bankruptcy Court noted that Rachmale had agreed to amend his complaint to seek relief only on his behalf, and not LTC's behalf. Specifically, the Court noted that, upon remand, Rachmale agreed to remove all language seeking damages for harm to LTC, and directed that "any damages must be limited to those Rachmale personally and distinctly experienced." *See* Order, Ex. "A" at p. 12.

E. **Rachmale's First Amended Complaint**

28. On November 26, 2014, Rachmale filed a First Amended Complaint in state court in Michigan. *See* First Amended Complaint, Ex. "B".

29. Contrary to the agreements and directives of the Michigan Bankruptcy Court, Counts I, II, III, IV, VI, VII and VIII purport to allege a variety of causes of action arising out of

9

the Investors' shareholder oppression, breach of fiduciary duty, fraudulent inducement/contructive fraud, tortious interference, unjust enrichment, civil conspiracy and aiding and abetting various torts, in connection with the operation of the Debtors' business, all of which resulted in injury to the Debtors and, derivatively, Rachmale's interest in the Debtors.

30. As a result, despite how pled, Counts I, II, III, IV, VI, VII and VIII allege injury common to all creditors and shareholders of the Debtors.

31. Furthermore, Count V purports to assert claims under the so-called Elliot-Larsen Civil Rights Act, Mich. Comp. Laws § 37.2201 *et seq.*, for acts of employment discrimination based on national origin. However, the statute at issue expressly provides for causes of action against an "employer." In this case, the "employer" includes the Debtor.

32. Accordingly, despite how it is styled, the claim in Counts V of the Michigan Action is actually a claim asserted against the Debtors.

33. Accordingly, because all of Rachmale's claims in the First Amended Complaint are either property of the Debtors' estates or are claims against the Debtors, the automatic stay should be enforced, enjoining the further prosecution of the Michigan Action.

### REQUEST FOR RELIEF

### Count One
### Enforcement of Automatic Stay

34. Section 362(a) of the Bankruptcy Code defines the scope of the automatic stay in pertinent part as follows:

> [A] petition filed under…this title…operates as a stay…of –
>
> (1) the commencement or continuation…of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;

ACTIVE 29032659v1 02/18/2015 10:21 AM

>   (3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;

11 U.S.C. §§ 362(a)(1) and 362(a)(3).

35. The purpose of the automatic stay is three-fold: "to prevent certain creditors from gaining a preference for their claims against the debtor; to forestall the depletion of the debtor's assets due to legal costs in defending proceedings against it; and in general, to avoid interference with the orderly liquidation or rehabilitation of the debtor." In re DBSI, Inc., 407 B.R. 159, 166 (Bankr. D. Del. 2009) (quoting Borman v. Raymark Indus., Inc., 946 F.2d 1031, 1036 (3d Cir. 1991)).

36. Section 362(a)(3) implements a stay of any action that seeks to obtain possession or exercise control over property of a debtor's estate. Cuffee v. Atlantic Bus. and Cmty. Dev. Corp. (In re Atlantic Bus. and Cmty. Corp.), 901 F.2d 325, 327 (3d Cir. 1990) (citing 11 U.S.C. § 362(a)(3)). See In re Mortgage America Corp, 714 F.2d 1266, 1273 (5th Cir. 1983). "The scope of the automatic stay is undeniably broad." In re Atlantic Bus. and Cmty. Corp., 901 F.2d at 327.

37. A violation of the automatic stay occurs when a creditor attempts to exercise control over property of the estate.

38. Section 541 of the Bankruptcy Code defines property of the estate as "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). Moreover, pursuant to 11 U.S.C. § 541(a)(7), property of the estate includes: "(7) [a]ny interest in property that the estate acquires after the commencement of the case." 11 U.S.C. § 541(a)(7).

11

39. Claims against officers and directors which allege injury common to all creditors and shareholders are claims which belong to the estate and may be brought exclusively by the Trustee. See Koch Ref. v. Farmers Union Central Exch., Inc., 831 F.2d 1339, 1348-49 (7th Cir. 1987); S.I. Acquisition, Inc. v. Eastway Delivery Serv., Inc., 817 F.2d 1142, 1153 (5th Cir. 1987); Delgado Oil Co. v. Torres, 785 F.2d 857, 861 (10th Cir. 1986); see also Cedarbrook Plaza, Inc. v. Gottfried, No. Civ. A. 97-1560, 1997 WL 330390, *9-11 (E.D. Pa. June 6, 1997). Moreover, shareholder derivative claims against officers and directors are claim which may only be brought by the Trustee on behalf of the estate. See Koch Ref., 831 F.2d at 1343-44; see also Mitchell Excavators by Mitchell v. Mitchell, 734 F.2d 129, 131 (2d Cir. 1984).

40. Counts I, II, III, IV, VI, VII and VIII are derivative claims which belong exclusively to estate. Accordingly, because the continued litigation of the Michigan Action would be deemed an act to exercise control of the property of the Debtors' estate, such action would be deemed a violation of the automatic stay. 11 U.S.C. § 362(a)(3).

41. Further, despite how it is labeled, Count V asserts a claim against the Debtors, which claim is stayed by the automatic stay. 11 U.S.C. § 362(a)(1).

42. Therefore, this Court should enter an order enforcing the automatic stay and enjoining Rachmale from continuing to prosecute the Michigan Action.

### Count Two
### Injunctive Relief Pursuant to 11 U.S.C. § 105

43. The Trustee repeats and re-alleges the allegations contained in all of the proceeding paragraphs of this Complaint as if the same were set forth herein at length.

44. Pleading in the alternative, assuming the Court does not conclude that the automatic stay applies to some or all of the Rachmale claims, the Court should extend the automatic stay pursuant to Section 105 of the Bankruptcy Code.

45. Section 105(a) authorizes the court to issue "any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

46. Section 105 of the Bankruptcy Code gives a bankruptcy court the power to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title" and this power has not been expressly limited by § 362. See Memphis Bank & Trust Co. v. Brooks, 10 B.R. 306, 308 (W.D. Tenn. 1981) (finding that it was necessary and appropriate for the bankruptcy court to exercise its § 105 powers in the case.).

47. It is commonly recognized that the grant of authority in § 105 includes the power to enjoin a party from proceeding against non-debtor third parties. See e.g. Chase Manhattan Bank v. Third Eighty-Ninth Assocs. (In re Third Eighty-Ninth Assocs.), 138 B.R. 144, 146 (Bankr. S.D.N.Y. 1992); Otero Mills, Inc. v. Security Bank & Trust (In re Otero Mills, Inc.), 21 B.R. 777, 778 (Bankr. N.M. 1982), aff'd 25 B.R. 1018 (D.N.M. 1982).

48. An injunction may be granted where there is some adverse impact on the bankruptcy estate resulting from an outside action against a non-debtor party. See e.g. In re Otero Mills, 21 B.R. at 778.; In re Philadelphia Newspapers, LLC, 407 B.R. 606, 616 (E.D. Pa. 2009).

49. Moreover, where an outside action could effectively reduce the estate assets available for reorganization or distribution to creditors, injunctive relief is appropriate. Gillman v. Continental Airlines, Inc. (In re Continental), 177 B.R. 475, 481 (D. Del. 1993).

50. The continued litigation of Rachmale's claims against the defendants (even to the extent not exclusively owned by the estate) will have an adverse effect on the estate. The Trustee has began his own investigation into potential claims against officers and/or directors, and is likely to file suit shortly. Such a lawsuit will undoubtedly trigger insurance coverage.

13

Therefore, the continued litigation of the Michigan Action will have the effect of depleting existing insurance coverage if and when the estate asserts its own claims. Second, the director defendants have indicated they will be asserting indemnification claims against the estate, which may have the further effect of reducing assets available for distribution to creditors.

51. Thus, the continuation of the Michigan Action, if not enjoined, will result in the depletion of potential assets available to the estates for distribution to all creditors, and will have the effect of benefiting one former shareholder at the expense of the creditors.

52. The injunctive relief requested will serve the public interest by promoting compliance with the Congressional purpose of the Bankruptcy Code by ensuring an orderly distribution of the assets of the Debtors' estates in accordance with the priorities set forth in the Bankruptcy Code.

53. As a result, the Court should issue an injunction under 11 U.S.C. § 105 temporarily enjoining Rachmale from continuing to proceed with the Michigan Action.

## PRAYER FOR RELIEF

WHEREFORE, the Trustee requests judgment in his favor and against Avinash Rachmale:

1. finding that Avinash Rachmale is violating the automatic stay by attempting to exercise control over property of the estate by continuing to prosecute the Michigan Action;

2. finding that Avinash Rachmale is violating the automatic stay by continuing to assert a claim against the Debtors;

3. issuing a preliminary and permanent injunction enjoining any further prosecution by Avinash Rachmale of the Michigan Action;

4. granting the Trustee such other and further relief as is just and proper.

ACTIVE 29032659v1 02/18/2015 10:21 AM

Respectfully submitted,

**FOX ROTHSCHILD LLP**

By: /s/ L. John Bird

L. John Bird (DE Bar No. 5310)
919 N. Market Street, Suite 300
Wilmington, DE 19801-2323
Phone (302) 654-7444
Fax (302) 656-8920
lbird@foxrothschild.com

-and-

Michael G. Menkowitz
Samuel H. Israel
2000 Market Street, 20th Floor
Philadelphia, PA 19103-3222
Phone (215) 299-2000
Fax (215) 299-2150
mmenkowitz@foxrothschild.com
sisrael@foxrothschild.com

*Attorneys for Alfred T. Giuliano,*
*Chapter 7 Trustee for LTC Holdings, Inc., et al.*

Dated: February 18, 2015