**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re | Chapter 7 |
| LTC HOLDINGS, INC., *et al.*,[1] | Case No. 14-11111 (CSS)<br>(Jointly Administered) |
| Debtors. | |
| | **Hearing Date: April 6, 2015 at 11:00 a.m.**<br>**Obj. Deadline: March 30, 2015 at 4:00 p.m.** |

**MOTION OF CHAPTER 7 TRUSTEE FOR ORDER APPROVING THE STIPULATION
OF SETTLEMENT AND MUTUAL RELEASE BY AND BETWEEN THE TRUSTEE
AND PERNIX GROUP, INC., CONCERNING THE PERNIX-LTC JOINT VENTURE
PURSUANT TO FED. R. BANKR. P. 9019**

Alfred T. Giuliano (the "Trustee"), the chapter 7 trustee for the jointly administered

estates of LTC Holdings, Inc., *et al.* (the "Debtors"), by and through his attorneys, Fox

Rothschild LLP, respectfully requests the entry of an order approving the Stipulation of

Settlement and Mutual Release (the "Stipulation and Mutual Release"),[2] by and between the

Trustee and the Pernix Group, Inc. (the "Pernix Group" and collectively with the Trustee referred

to herein as the "Parties"), resolving any dispute as to the Pernix-LTC Joint Venture (as defined

below), pursuant to Fed. R. Bankr. P. 9019 (the "Motion"). In support of the Motion, the Trustee

respectfully represents as follows:

---

[1] The Debtors in these cases, along with the last four digits of their federal tax identification numbers are (i) LTC Holdings, Inc. (3283) (Case No. 14-11111); (ii) LTCCORP, Inc. (1361) (Case No. 14-11112); (iii) LTCCORP Government Services, Inc. a/k/a Lakeshore Toltest Corporation; LTC (2894) (Case No. 14-11113); (iv) LTCCORP Government Services-MI, Inc. a/k/a Lakeshore Engineering Services, Inc.; Lakeshore Group; LTC Corp Michigan; LTC Michigan (8977) (Case No. 14-11115); (v) LTCCORP Government Services-OH, Inc. a/k/a TolTest, Inc.; LTC; LTC Ohio; LTC Corp; LTC Corp Ohio (1985) (Case No. 14-11116); and (vi) LTCCORP E&C Inc. (6406) (Case No. 14-11117).

[2] A true and correct copy of the Stipulation and Mutual Release is attached hereto as **Exhibit "A"**, and incorporated by reference herein.

**JURISDICTION**

1.  This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).

2.  Venue of this proceeding and this Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

3.  The statutory predicate for the relief sought herein is Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

**BACKGROUND**

**A.   Bankruptcy Procedural History**

4.  On May 2, 2014 (the "Petition Date"), the Debtors each filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code.

5.  On or about May 2, 2014, the Office of the United States Trustee appointed the Trustee as chapter 7 trustee, which appointment remains in effect.

6.  By Order entered on May 14, 2014, the Bankruptcy Court consolidated the Debtors' cases, for procedural purposes only, and ordered the joint administration of the Debtors' cases pursuant to Bankruptcy Rule 1015(b) and Local Rule 1015-1 (the "Joint Administration Order"). [D.I. 17].

**B.   Formation of the LTC-Pernix Joint Venture**

7.  Prior to the Petition Date, on or about February 7, 2014, that certain Joint Venture Agreement (the "Joint Venture Agreement") was entered into by and between Debtor LTCCORP, Inc. ("LTC") and Pernix Group, for the purposes of forming a joint venture to be known as Pernix-LTC, Joint Venture (or by any other name as determined by the Management Committee thereof) (the "Pernix-LTC Joint Venture"), to perform under the terms of that certain Maximum

2

Guaranteed Contract dated February 7, 2014 (the "Contract") issued by ERB A&M Partners I, LLC (the "Owner") to build a Nanotechnology Laboratory Building for Texas A&M University at College Station, Texas (the "Project").

8.      On or about February 11, 2014, Pernix Group and LTC formed Pernix LTC LLC, an Illinois limited liability company (the "LLC") as the contemplated legal entity for the Pernix-LTC Joint Venture, but the Pernix-LTC Joint Venture never conducted business in the LLC's name and no organizational documents were created for the LLC.

9.      Pursuant to the Joint Venture Agreement, each of the Parties was to be compensated for services, work, labor and materials provided in the performance of the Contract (the "Services") and was to be reimbursed for costs incurred pursuant to the Joint Venture Agreement and to the extent set forth in the Contract.

10.     Pursuant to the Joint Venture Agreement, (a) all net proceeds representing the cash, interests from investments, equipment, receivables, claims of every kind or nature, or other property derived from the performance of the Contract by the Pernix-LTC Joint Venture, (b) any and all profits and any and all losses and liabilities or other obligations of the Pernix-LTC Joint Venture which may result from the performance of the Contract, and (c) all financial obligations assumed by the Pernix-LTC Joint Venture, were to be shared by Parties as follows: (i) LTC (20%); and (ii) Pernix Group (80%).

11.     Pursuant to the Joint Venture Agreement, in the event that LTC or Pernix Group defaulted under the terms of the Joint Venture Agreement, the defaulting party would be entitled to compensation for Services that it performed under the Contract, its share of profits that resulted from the performance of the Contract, and reimbursement of costs that it incurred in performing under the Contract that remained unpaid as of the date of default.

12.     Section 14 of the Joint Venture Agreement provides in relevant part that:

In the event of the bankruptcy or insolvency of either of the Parties, or should either of the Parties commit any act of bankruptcy or take advantage of any bankruptcy, reorganization, composition or arrangement statute, or should either of the Parties cease to do business, then such Party (hereinafter referred to as the "insolvent Party") from and after said date, is hereby deemed to have waived its equity interest and future profit in this Joint Venture. Further its representative and/or alternate to the Management Committee (anything in this Agreement contrary notwithstanding) shall cease to have any say or voice in the management of the Joint Venture or the Contract and the Management Committee shall thenceforth be composed solely of the representative or alternate of the other Party and shall not include the representative or alternate of the insolvent Party, and wherever it is provided in this Agreement that the act, consent or decision of the Parties is required, it shall be deemed to mean the act, consent or decision of the other Party excluding the insolvent Party. The insolvent Party shall remain liable for its share of losses as provided in Section 3 a. hereof. The insolvent Party shall be entitled to any compensation and reimbursement not yet paid by the Joint Venture but already earned as provided in this Agreement. If such insolvency, bankruptcy or other proceeding of the type above described cause damage or extra cost to the other Party, such damage or extra cost shall be charged against any compensation and reimbursement or profit not yet paid.

13.     In late April, LTC informed Pernix Group that, among other things, LTC would no longer perform under the Contract or Joint Venture Agreement.

14.     On May 1, 2014, Pernix Group sent a letter to LTC stating, among other things, that pursuant to the terms of the Joint Venture Agreement, LTC waived its equity interest and future profit in the Pernix-LTC Joint Venture and that LTC would no longer be involved in the management thereof.

15.     As of the Petition Date, the Contract was partially completed. LTC contended that it had not received payment for the period of April 1, 2014, through April 30, 2014, for the Services that it performed under the Contract, its share of the profits that resulted from the performance of the Contract, or for the costs that incurred in performing under the Contract.

16.     The Trustee, by and through his retained professional Custom Mechanical Systems, Corp. ("CMS"), thereafter made a demand on Pernix Group in the amount of

$128,000.00 (the "Demand Amount"), asserting claims for, including but not limited to, an accounting of the profits that resulted from the performance of the Contract, compensation for Services performed under the Contract, and reimbursement of costs incurred in performing under the Contract that remained unpaid for the period of April 1, 2014, through April 30, 2014 (collectively, the "Claims").

17.     Pernix Group has asserted various defenses to the Claims, including, without limitation, breach of contract counterclaims against the Debtors and rights of offset or setoff (collectively, the "Defenses").  Specifically, Pernix Group has asserted that the Demand Amount improperly included an estimated invoiced amount of $73,227.30 for Services performed in April.  Pernix Group has provided reliable documentation and support that the invoiced amount must be adjusted because the value of the actual services performed in April was $51,865.60, thereby reducing the Demand Amount by $21,361.70.  Additionally, Pernix Group has asserted that the Demand Amount incorrectly included a retainage claim in the amount of $14,938.59 for LTC's share of the Pernix-LTC Joint Venture's total retainage held by the Owner.  Pernix Group contends that because no retainage amount has been paid to or held by Pernix Group or the Pernix-LTC Joint Venture, it has no obligation to advance to the Trustee on behalf of LTC any portion of the retainage amount attributable to the period prior to the Petition Date.

18.     In order to avoid the need for costly litigation, the Parties seek to settle and resolve any and all disputes as to the Pernix-LTC Joint Venture, the Joint Venture Agreement, the LLC, the Contract, the Project, the Claims, and the Defenses on the terms set forth in the Stipulation and Mutual Release attached hereto as **Exhibit "A"**.

C.    **Salient Provisions of the Stipulation and Mutual Release**

19.    The Stipulation and Mutual Release is subject to the Bankruptcy Court's entry of an Order (the "Approval Order") approving the Stipulation and Mutual Release between the Parties pursuant to Fed. R. Bankr. P. 9019.

20.    Additionally, pursuant to the terms of the Stipulation and Mutual Release, in full and complete satisfaction of the Trustee's Claims and all of LTC's and the Debtors' estates' rights, title, and interests in and to the Pernix-LTC Joint Venture, the Joint Venture Agreement, the LLC, the Contract, and the Project, Pernix Group shall pay the Trustee the sum of $93,938.59 (the "Payment"). The Payment shall be made within five (5) business days from the date that the Approval Order becomes a final and non-appealable order.

21.    Under the terms of the Stipulation and Mutual Release, upon the Effective Date and the Trustee's receipt of Payment, LTC shall be deemed to have withdrawn as a member in and/or party to the Pernix-LTC Joint Venture and the LLC, and shall be deemed to have assigned to Pernix Group any and all rights and interests in and to the Pernix-LTC Joint Venture and the LLC in accordance with the terms of the Joint Venture Agreement. The Trustee shall execute such other documents necessary to effectuate the assignment to Pernix Group of such rights and interests in and to the Pernix-LTC Joint Venture and the LLC, as requested by Pernix Group.

22.    With respect to the Mutual Release, except with respect to the obligations set forth in the Stipulation and Mutual Reelase, upon the Effective Date and the Trustee's receipt of the full amount of the Payment, the Trustee, on behalf of himself, the Debtors and their estates, on the one hand, and Pernix Group, on the other hand, remise, release, discharge and acquit each other, and each other's respective executors, executrixes, employees, shareholders, attorneys, officers, directors, managers, members, agents, representatives, affiliates, subsidiaries, parents,

successors and assigns, from any and all claims, actions, liabilities, debts, liens, security interests

and causes of action whatsoever, however incurred or arising, now existing or hereafter arising,

known or unknown, actually brought or that could have been brought relating to or pertaining to

the Pernix-LTC Joint Venture, the Joint Venture Agreement, the LLC, the Contract, the Project,

the Claims, and the Defenses.

23.     Also, under the terms of the Stipulation and Mutual Release, the Trustee, on

behalf of himself, the Debtors and their estates, has agreed to waive, release, disclaim and

discharge any and all claims, actions, liabilities, debts, liens, security interests and causes of

action against the Owner and the Project relating to or pertaining to the Contract or otherwise.

Pernix Group has also agreed to waive, release, disclaim and discharge any right that it or its

assigns and successors has or may have to file a proof of claim against the Debtors' estates under

Section 502(h) of the Bankruptcy Code, or otherwise receive payment from the Debtors' estates,

with respect to the Payment.

## RELIEF REQUESTED

24.     By and through this Motion, the Trustee seeks entry of an order authorizing and

approving the Stipulation and Mutual Release pursuant to Bankruptcy Rule 9019.

## BASIS FOR RELIEF REQUESTED

25.     Bankruptcy Rule 9019 provides that "[o]n motion by the [T]rustee and after

notice and a hearing, the court may approve a compromise or settlement.  Notice shall be given

to creditors, the United States trustee, the debtor. . . and to any other entity as the court may

direct." Fed. R. Bankr. P. 9019(a); see also Myers v. Martin (In re Martin), 91 F.3d 389, 393 (3d

Cir. 1996).

26.     The Trustee is obligated to maximize the value of the estates and make his decisions in the best interests of all of the creditors of the estates.  See Martin, 91 F.3d at 394. The Trustee believes, in his business judgment, that entry of the Stipulation is in the best interests of the Debtors' Estates and all of their creditors.  Courts generally defer to a trustee's business judgment when there is a legitimate business justification for the trustee's decision.  See Martin, 91 F.3d at 395.

27.     In determining whether a stipulation should be approved under Bankruptcy Rule 9019, the Court must "assess and balance the value of the claim that is being compromised against the value to the estate of the acceptance of the compromise proposal."  Martin, 91 F.3d at 393.  In striking this balance, courts should consider four factors: "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors."  Id. (citation omitted).

28.     The Parties engaged in good faith, arms-length settlement negotiations in entering into the Stipulation and Mutual Release.

29.     The Stipulation and Mutual Release should be approved because (a) sound business justification supports it, (b) it is reasonable, and (c) the four (4) Martin factors weigh in favor of approval.  Absent entry on an order approving this Stipulation and Mutual Release, (i) the Trustee would be forced to incur substantial litigation costs to litigate the Claims to finality; (ii) Pernix Group would assert its right to indemnification under the Joint Venture Agreement against any judgment or award on account of the Claims; and (iii) the Trustee would be significantly delayed in recovering any profits and compensation for Services performed under the Contract.

30.     The Trustee submits, in the exercise of his business judgment, that the Stipulation and Mutual Release proposed herein is reasonable, will maximize the benefit to the Debtors' Estates with the least cost.  The Trustee believes that the paramount interest of the creditors favors approval of the Stipulation and Mutual Release.

31.     Therefore, based on the foregoing, the Court's approval of the Stipulation and Mutual Release is appropriate and in the best interests of the Debtors' Estates and their creditors.

## NOTICE

32.     Notice of this Motion has been provided to: (a) the Office of the United States Trustee for the District of Delaware; (b) counsel to the Debtors; (c) counsel to the Debtors' secured creditors; (d) counsel to Pernix Group, Inc.; (e) those persons who have requested notice pursuant to Bankruptcy Rule 2002; and (f) in accordance with this Court's July 2, 2014 *Order Pursuant to 11 U.S.C. §§ 102 and 105(a) and Fed. R. Bankr. P. 2002(m) and 9007 Establishing Notice and Service Procedures* [D.I. 105].  The Trustee submits that no further notice is required.

**[Remainder of page left intentionally blank]**

**CONCLUSION**

WHEREFORE, the Trustee respectfully requests that this Court enter an order authorizing and approving the Stipulation and Mutual Release pursuant to Bankruptcy Rule 9019, and granting such other and further relief as the Court deems appropriate.

Respectfully submitted,

**FOX ROTHSCHILD LLP**

By: */s/  L. John Bird*
          L. John Bird
          Delaware Bar No. 5310
          919 North Market Street, Suite 300
          Wilmington, DE  19801-2323
          Phone (302) 654-7444/Fax (302) 656-8920
          lbird@foxrothschild.com

                    -and-

          Michael G. Menkowitz
          Jason C. Manfrey
          2000 Market Street, 20th  Floor
          Philadelphia, PA  19103-3222
          Phone (215) 299-2000/Fax (215) 299-2150
          mmenkowitz@foxrothschild.com
          jmanfrey@foxrothschild.com

          *Attorneys for Alfred T. Giuliano, Chapter 7 Trustee*
          *for the estates of LTC Holdings, Inc., et al.*

Dated:  March 16, 2015