## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| LTC Holdings, Inc., *et al.*, | ) | Case No.: 14-11111 (CSS) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| _____ | ) | |
| Alfred T. Giuliano, Chapter 7, | ) | |
| Trustee, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Adv. No.: 15-51889 (CSS) |
| | ) | |
| The Insurance Company of the | ) | |
| State of Pennsylvania, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |
| Alfred T. Giuliano, Chapter 7 Trustee, | ) | |
| | ) | |
| v. | ) | Adv. No.: 16-51036 (CSS) |
| | ) | (consolidated with Adv. No. 15-51889) |
| The Insurance Company of the State | ) | |
| of Pennsylvania, Lexon Surety Group | ) | |
| LLC d/b/a Lexon Insurance Company | ) | |
| And Bond Safeguard Insurance | ) | |
| Company | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## <u>OPINION</u>

**Klehr Harrison Harvey Branzburg LLP**
Richard M. Beck
919 Market Street, Suite 1000
Wilmington, DE  19801
-and-
**Chapman and Cutler LLP**
David T. Audley
Michael T. Benz

**Whiteford Taylor & Preston LLC**
Thomas J. Francella, Jr.
405 North King Street 500
Wilmington, DE  19801
-and-
**Chiesa Shahinian & Giantomasi PC**
Armen Shahinian
Andrew S. Kent

111 West Monroe Street
Chicago, Illinois 60603

Counsel for BMO Harris Bank, N.A.

Scott A. Zuber
One Boland Drive
West Orange, NJ  07052

Counsel for the Insurance Company of
the State of Pennsylvania

Dated: February 4, 2019

Sontchi, C. J. _____

## INTRODUCTION

Fed. R. Civ. P. 56(c)(4) sets out three elements that such a declaration must meet in order to be admissible. It "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." The Court here addresses a Motion to Strike alleging that a declaration and its exhibits fail to meet these standards. A 2010 overhaul of this Rule removed, among others, the requirement that such submissions actually meet authentication requirements at the summary judgment stage and relieved the judicial system and litigants of the time and expense of authenticating every document at this point. After this streamlining, an unauthenticated submission became grounds for objection, requiring the proponent to show that the document is admissible or will be at trial. A declarant need not be the person who authenticates his own exhibits for them to be admissible. Any knowledgeable witness will do. Because most of the documents at issue have been or can be authenticated, the Court denies the bulk of the motion.

**JURISDICTION & VENUE**

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

**PROCEDURAL HISTORY**

Debtor Lakeshore Toltest Company ("LTC") is a construction company and parent of construction companies Toltest, Inc. ("Toltest") and Lakeshore Engineering Services ("LES"), collectively "Debtors."[1] The United States had retained Debtors to perform several construction projects, including structures in the Middle East for the Department of Defense.

On May 2, 2014 ("Petition Date"), Debtors filed a voluntary Chapter 7 petition. Two and half years later, the Trustee filed a complaint against the Insurance Company of the State of Pennsylvania ("ICSP"), a surety for several Debtor Government contracts.[2] The complaint alleges, among other things, that ICSP forced Debtors to enter into an unfavorable financing arrangement while they were struggling financially. At the end of 2017, ICSP made two motions for summary judgment, one of which is at issue here. On the same day, it moved for summary judgment on the first five counts of the complaint and separately on the ownership of Debtors' escrowed tax refund – to which Debtors had given up claim in a court-approved settlement with the United States. In support of this

---

[1] LTC also has a parent and affiliate debtors, which are not implicated here. The chart in D.I. 83, at p.13 may prove useful.

[2] Adv. Pro. 15-51889. All "D.I."s refer to this proceeding unless otherwise stated.

motion, ICSP submitted the declaration (and attached exhibits) of AIG employee Douglas Fine. The next day, BMO Harris Bank N.A. ("BMO") – Debtors' first lien creditor[3] – fired back with its own Motion for Summary Judgment on the tax refund.  On February 26, 2018, BMO filed a Motion to Strike the declaration. This opinion addresses this Motion to Strike.

## FACTUAL BACKGROUND

The United States hired LTC to build the National Police Command Center in Afghanistan ("NPCC") and the Al Dhafra air base in United Arab Emirates ("Al Dhafra"). ICSP, an AIG affiliate, was retained as surety.[4] The United States deemed ICSP in default on some of its contracts.[5] Though LTC protested, it was unable to finish the NPCC. ICSP had to step in to assure completion. Soon thereafter, on May 2, 2014, Debtors filed for bankruptcy. Later that summer, ICSP, the United States, and a contractor called Macro Vantage Levant JLT ("Macro Vantage") entered into an agreement ("NPCC Agreement") whereby Macro Vantage would finish the NPCC. Macro Vantage completed the project, and the United States released ICSP from further suretyship obligations under the NPCC Agreement.[6] In the meantime, in June 2016, this Court approved a settlement and stipulation (collectively "Settlement") where Debtors gave up their contract claims

---

[3] Del. Bankr. 14-11111 D.I. 110, at ¶9.

[4] AIG or its affiliates were also the sureties for Debtors' other contracts with the United States.

[5] Del. Bankr. No. 14-11111 D.I. 662-1, at p.4.

[6] D.I. 79-7.

against the United States in exchange for the United States waiving its setoff rights against their tax refund.[7]

Over the course of almost two years – from October 2014 to September 2016 – ICSP spent about $12 million on the NPCC.[8] And it wants some of its money back.

In early 2014, Trustee filed a consolidated federal tax return for 2013.[9] The return showed net operating losses of about $28 million for the year.[10] LTC sought to carryback this loss and attain a refund of approximately $5.5 million ("Tax Refund") in federal income taxes paid in 2011.[11] The United States refused to release the Tax Refund and asserted setoff rights for the contracts on which it claimed Debtors defaulted.

The United States and Trustee negotiated a settlement and stipulation where Debtors gave up their contract claims against the United States in exchange for the United States waiving its setoff rights against their tax refund. This court approved the Settlement and it became effective June 29, 2016. Per the Settlement, the Trustee is holding the Tax Refund is escrow. A dispute between BMO – and ICSP over the Tax Refund has spawned the instant motion.

ICSP argues that, as the United States' subrogee, it is owed the Tax Refund. BMO responds that ICSP's rights were not yet subrogated at the time of the Settlement, so the

---

[7] Del. Bankr. No. 14-11111 D.I. 923 and D.I. 662. LTC's parent and other affiliate debtors were also party to this Settlement.

[8] D.I. 92-8, at p.10.

[9] D.I. 79, Ex. M(1); D.I. 20 (Counterclaim) at ¶20; D.I. 83, at pp. 7-8.

[10] D.I. 79, Ex. M(1); D.I. 20 (Counterclaim) at ¶20; D.I. 83, at pp. 7-8.

[11] D.I. 79, Exs. M(1) and M(3); D.I. 20 (Counterclaim) at ¶20; D.I. 83, at pp. 7-8.

United States' release of its rights also extinguished ICSP's rights. In any event, BMO continues, the United States had superior rights in the Tax Refund because it had its own claims against Debtors to offset. Hence, ICSP would never have been entitled to the Tax Refund.  ICSP and BMO moved for summary judgment on their competing claims.

To support its summary judgment motion, ICSP relies upon a declaration – with 29 attached exhibits and sub-exhibits – from Douglas Fine. Fine is a Complex Claims Director for ICSP's parent AIG.

BMO moves to strike Fine's declaration and its exhibits for failing to meet any the requirements in Fed. R. Civ. P. 56(c). BMO has not specified the defects in each exhibit it seeks to strike and ICSP has not spelled out a defense for all its exhibits.

## ANALYSIS

### A. Fed. R. Civ. P. 56(c)(4) Summary Judgment – Procedures – Affidavits and Declarations[12] and Fed. R. Evid. 901(a) Authenticating or Identifying Evidence – In General

Fed. R. Civ. P. 56(c)(4) sets out three elements that such a declaration must meet in order to be admissible. It "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."

The Fed. R. Civ. P. does not limit proponents or opponents to relying on evidence already in the record. It allows parties to attach new documents to their declarations. A 2010 overhaul of Rule 56 has changed the evidentiary standards that such documents

---

[12] The Motion to Strike standard is not included. The Comments to the 2010 Amendments to Fed. R. Civ. P. 56 permit such a request to be made as an objection and remove the need to file a motion.

must meet. Prior to 2010, summary judgment evidence had to meet trial-like requirements.[13] They must have been authenticated by the declarant and accompanied by a declarant affidavit supporting their authenticity. The 2010 amendments struck these requirements. This shift streamlined the summary judgment process, permitting courts to assess whether there is sufficient evidence to justify a trial "without imposing on parties the time and expense it takes to authenticate everything in the record." In the service of judicial economy, submission of unauthenticated documents is no longer sloppy lawyering. But the changes were not intended to let just anything in. And though the submission of unauthenticated documents was "not a violation of any express obligation imposed by the Rules… [it became] grounds for objection, in which case the proponent has the burden to show that the material is admissible as presented or to explain the admissible form that is anticipated."[14] Authentication is an "incredibly "slight" burden, which may be satisfied by simply producing evidence sufficient to support a finding that the item is what the proponent claims it is."[15]

---

[13] "Prior to its amendment in 2010, Rule 56 required that a sworn or certified copy of any document referred to in an affidavit be attached to the affidavit…Further, to be admissible, documents had to be authenticated by and attached to an affidavit that met the requirements of Rule 56 and the affiant had to be a person through whom the exhibits could be admitted into evidence. However, when the rule was amended in 2010, the rulemakers omitted these specific requirements." *Materials Considered on the Motion – Pleadings, Depositions, Interrogatory Answers, Admissions, Affidavits, Stipulations and Electronically Stored Information, 10A Fed. Prac. & Proc. Civ.* § 2722 (4th ed.) citation omitted.

[14] Fed. R. Civ. P. 56 (2010 Advisory Committee comments); Rule56.Summary Judgment, 2 Federal Rules of Civil Procedure, Rules and Commentary Rule 56; *Foreword Magazine, Inc. v. OverDrive, Inc.,* No. 1:10-CV-1144, 2011 WL 5169384, at *2 (W.D. Mich. Oct. 31, 2011). (Notably, the failure to make an objection to authenticity here does not waive the right to object at trial. And – perhaps more noteworthy to this Court – a Motion to Strike is not necessary.)

[15] *Blunt v. Lower Merion Sch. Dist.,* 767 F.3d 247, 330 (3d Cir. 2014), citing Fed. R. Evid. 901(a) internal quotations omitted.

Rule 56's new "would be admissible in evidence" language does not require parties to meet the trial stage's evidentiary standards at the time of summary judgment. The Third Circuit permits the use of inadmissible statements "on a motion for summary judgment if they *are capable of being admissible at trial*…The proponent need only "explain the admissible form that is anticipated."[16] Other circuits agree.[17] Parties need to only show that the facts would be presented in a form admissible at the time of trial for them to be used at the summary judgment phase.[18]

1. *Fed. R. Evid. 803(6) – Exceptions to the Rule Against Hearsay – Records of a Regularly Conducted Activity*

Business records must clear an additional hurdle to be admitted as evidence. Witnesses must be able to show that 1) the record was issued around the time of the activity by someone with knowledge or with such person's information, 2) the record

---

[16] *Fraternal Order of Police, Lodge 1 v. City of Camden*, 842 F.3d 231, 238 (3d Cir. 2016), citing Fed. R. Civ. P. 56 advisory committee's note to 2010 amendment, other citations and internal quotations omitted. The court here is talking about a nonmoving party's production, while the instant matter concerns a moving party's production.  Nonetheless, this precedent is applicable here, as it reads Rule 56 to permit the use of inadmissible evidence at the summary judgment stage.

[17] *Selvam v. Experian Info. Sols., Inc.*, 651 F. App'x 29, 31 (2d Cir. 2016); *Humphreys & Partners Architects, L.P. v. Lessard Design, Inc.*, 790 F.3d 532, 538–39 (4th Cir. 2015); *Lee v. Offshore Logistical & Transp., L.L.C.*, 859 F.3d 353, 355–56 (5th Cir. 2017), as revised (July 5, 2017), vacating and remanding for consideration whether excluded evidence could have been "presented in a form that would be admissible at trial"; *McGuire v. Michigan Dep't of Cmty. Health*, 526 F. App'x 494, 496 (6th Cir. 2013); *Cehovic-Dixneuf v. Wong*, 895 F.3d 927, 931 (7th Cir. 2018); *Cannon Int'l, Ltd. v. Blocker*, 684 F.3d 785, 793 (8th Cir. 2012); *Romero v. Nevada Dep't of Corr.*, 673 F. App'x 641, 648 (9th Cir. 2016); *Campbell v. Shinseki*, 546 F. App'x 874, 879 (11th Cir. 2013).

[18] Though these changes may appear as a sharp departure from legal practice, they are better viewed as an extension of established jurisprudence. For years, courts have permitted the use of unauthenticated documents in opposition to summary judgment motions, if they could later be authenticated at trial.  *See e.g. Blunt v. Lower Merion Sch. Dist., 767 F.3d 247, 295 (3d Cir. 2014), Lexington Insurance Co. v. Western Pennsylvania Hospital, 423 F.3d 318, 329 n. 6 (3d Cir.2005), and Williams v. Borough of West Chester, 891 F.2d 458, 465 n. 12 (3d Cir.1989).*  The 2010 amendments extend this treatment to documents used in support of a summary judgment motion.

was kept in the course of a regularly conducted activity, and 3) making the record was a regular practice.[19]

   *2. Remedies for documents failing to meet the standards.*

Even if some exhibits can not meet the new, lower standard, this need not be the end of the line for them. Courts have "great flexibility with regard to the evidence that may be used on a [summary judgment] proceeding."[20] "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion...the court may... give an opportunity to properly support or address the fact."[21]

### B.  Arguments of the Parties

BMO argues that Fine "lacks the requisite personal knowledge and is not competent to testify regarding the statements set forth in his declaration" and that his "declaration does not contain admissible evidence...given that Fine cannot authenticate the exhibits accompanying his declaration."[22] The creditor lists a litany of shortcomings, including that the Declaration does not "identify what business records Fine has reviewed" or "confirm that Fine has read or reviewed the documents that he attaches as Exhibits".[23] These defects, according to BMO, reduce the Declaration to "a cursory obligatory

---

[19] Fed. R. Evid. 803(6).

[20] *10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure* § 2721 (3d ed.1998), as amended (June 24, 2015).

[21] Fed. R. Civ. P. 56(e)(1).

[22] D.I. 88, at pp. 3-4.

[23] D.I. 88, at p. 3.

statement."[24] Such a statement does not establish Fine's personal knowledge and should be stricken.

ICSP counters that Fine is competent to testify and that BMO's objection is little more than an objection to form. Specifically, ICSP writes that BMO is objecting because the Declaration did not restate all the considerable personal knowledge of Douglas Fine that is already on the record. ICSP also points out that BMO has acceded to the admissibility of some of Fine's exhibits, that some exhibits are already in the record, and that some may be properly authenticated by people other than Fine.

### C. Application of Law to Declaration and Exhibits

#### 1. *Authentication and Admissibility*

BMO argues that because Fine was never a debtor employee, he can not authenticate their business records, including several exhibits.[25] This is just a wrong view of the law. Nowhere does the law require that an employee be the one to authenticate a business record. Any "qualified witness" may help get a business record into evidence.[26] And even if Fine were unable to authenticate some business records, this alone would not render him incompetent to testify on them if someone else could authenticate them. The Federal Rules of Civil Procedure does not require that any evidence to be authenticated by every witness testifying about it. It only requires that someone authenticate it.[27]

---

[24] D.I. 88, at p. 3.

[25] D.I. 88, at p 4.

[26] Fed. R. Evid. 803(6).

[27] *See e.g.* Fed. R. Evid. 901(b).

2.  *The Declaration*

The Court finds that Fine has personal knowledge regarding the Tax Refund and ICSP's suretyship of LTC's projects. Fine has been a complex claims director at AIG since 1996. He has been in charge of both the grand and granular aspects of his files, such as payment bond claims.[28] Fine has testified that he was "generally familiar with" the Debtors and first came to know them around the time of their bankruptcy in May 2014.[29] More specifically, he testified that he has availed himself of the information available to ICSP to testify on: issuance of and payment under performance bonds, transfers made to ICSP, ICSP's funding of debtors' payroll and payroll taxes, and facts and circumstances surrounding ICSP's position regarding ownership of the tax refund, and other issues.[30] He was also the person who signed the answers to BMO's interrogatories concerning the Tax Refund and surrounding circumstances.[31] Fine is personally knowledgeable and competent to testify on matters concerning ICSP's claims to the tax refund and ICSP's suretyship of debtors' projects. To the extent that Fine may lack knowledge or ability to testify on certain exhibits, this will be addressed at each exhibit's stage.

---

[28] D.I. 79-14 19:16-23, 20:4-21.

[29] D.I. 79-14 21:18-22:16.

[30] D.I. 79-14 11:11-13, 12:4-5, 13:5-9, 14:7-10, 15:10-14.

[31] D.I. 92-8.

3. *Exhibits A, B, G, and J*

The Court will not strike Exhibits A, B, G, and J, as they are already in the record as court orders or United States' proof of claims. The Court takes judicial notice of these documents.[32]

4. *Exhibit C*

Exhibit C is a March 2012 performance bond where LTC is principal and ICSP is surety. The bond assures the NPCC's construction. BMO argues that because Fine was never a debtor employee, he can not authenticate their business records.[33] As set forth above, this is wrong.

The question is then whether Fine is such a witness. To be able authenticate this apparent[34] business record and fortify it against hearsay objections, he must be able to show that 1) the performance bond was issued around the time of the activity by someone with knowledge or with such person's information, 2) the bond was kept in the course of a regularly conducted activity, and 3) issuing the bond was a regular practice.[35]

As AIG's claims director and as a person working on the case since around May 2014, Fine would be able to testify that issuing performance bonds was a regular practice and that the bond had been kept in the course of a regularly conducted activity – in this

---

[32] Fed. R. Evid. 201(b)(2).

[33] D.I. 88, at p4.

[34] No specific exhibits have been identified as business records. The treatment of certain exhibits as business records is based on their content and context.

[35] Fed. R. Evid. 803(6).

case suretyship.[36] However, Fine, who had become familiar with the LTC case only about two years after the issuance of the performance bond, would not have personal knowledge about its issuance. Nor would he have personal knowledge regarding how the bond was kept in the time from its issuance to May 2014. Fine would not be able to meet the "slight" burden of proving that the document is what it purports to be.

Nonetheless, the Court will give ICSP a chance to authenticate this exhibit.

5. *Exhibit D*

Exhibit D is the Tender, Mitigation, and Settlement Agreement into which ICSP, the United States, and contractor Macro Vantage Levant JLT entered in August, 2014. This is an agreement concerning the completion of the NPCC's construction. (Exhibit C is the accompanying performance bond.) BMO argues that because Fine was not a party to this agreement, he can not authenticate it.[37] By this point, however, Fine had been involved with LTC's file for a few months and the agreement lists him as the main contact for ICSP. In other words, Fine could authenticate this agreement even without being party to it. The Court will not strike this exhibit.

6. *Exhibit H*

Similar to Exhibit D, Exhibit H is a Tender, Mitigation and Settlement Agreement into which ICSP, the United States, and contractor Macro Vantage Levant JLT entered in November, 2014.   This is an agreement concerning the completion of Al Dhafra's

---

[36] D.I. 79-14 22:1-16.

[37] D.I. 88, at p4.

construction. By this point, Fine had been involved with LTC's file for a few months and the agreement lists him as the main contact for ICSP. The Court will not strike this exhibit.

7. *Exhibits E and F*

Exhibits E and F are letters from the United States to Macro Vantage. They concern Macro Vantage's construction of the NPCC, a project that it was completing on LTC's behalf pursuant to its agreement with the United States and surety ICSP.[38] Exhibit E is dated December 2015 and Exhibit F is dated August 2016. Exhibit F "also releases the surety from all further liability and responsibility from the tendered agreement." Neither Fine's nor ICSP's name appears in either Exhibit E or F. BMO argues that because Fine was neither the issuer nor the recipient of the letters, he can not authenticate them. ICSP counters that Fine can authenticate these exhibits because 1) he has been handling Debtors' bond claims since May 2014 and 2) he was the one who provided information regarding ICSP's payments to Macro Vantage under the performance bonds.[39] However, this does not render him competent to authenticate letters from the United States to that contractor.  Nonetheless, the Court will not strike these exhibits and will give ICSP an opportunity to show that Fine or someone else can authenticate them.[40]

---

[38] *See* D.I 79-4 (Exhibit C the purported performance bond), at ¶H and D.I. 79-5 (Exhibit D, the NPCC Tender Agreement stating that surety ICSP has issued a performance bond backing the NPCC's construction and that Macro Vantage will complete such construction), at § 2.2.

[39] D.I. 91, at pp. 20-21; D.I. 92-7 22:1-16; and D.I. 92-8.

[40] Fed. R. Civ. P. 56(e)(1).

8. *Exhibit I*

Exhibit I is a letter from the United States to Macro Vantage concerning its construction of Al Dhafra. Neither Fine's nor ICSP's name appears in Exhibit I. Though no performance bond is attached, the accompanying agreement references that one has been issued.[41] For reasons similar to the ones regarding the disposition of the motion regarding Exhibits E and F, Fine has not been shown competent to authenticate this letter. As above, the Court will not strike this exhibit and gives ICSP an opportunity to show that Fine or someone else can authenticate this exhibit.[42]

9. *Exhibits K and L*

Exhibits K and L are Trustee's responses to ICSP's first and second Requests for Admission respectively. Fed. R. Civ. P. 56(c)(1)(A) expressly allows courts to consider admissions and interrogatory answers in ruling on summary judgment motions. It does not seem that Fine would be knowledgeable enough to authenticate these documents. However, Andrew Kent, an ICSP attorney who submitted his own declaration in support of Fine's should be able to do so. The certificates of service of these exhibits list Kent as a recipient of these admissions. He should be able to verify that these exhibits are indeed Trustee's responses to his client's Requests for Admission. The Court will not strike this exhibit.

---

[41] *See* D.I. 79-9 (Exhibit H, the Al Dhafra Tender Agreement states that surety ICSP has issued a performance bond backing the Al Dhafra construction and that Macro Vantage will complete such construction.)

[42] Fed. R. Civ. P. 56(e)(1).

*10. Exhibit M*

Exhibit M is the transcript from the Trustee's Deposition. There are two ways to authenticate this deposition. One is through Fine and the other through the court reporter.

According to this transcript Fine was present at the deposition.[43] BMO points out that this does not give Fine "personal knowledge" of the events about which the Trustee was asked.[44] And argues that he is therefore not competent to testify on its contents and the exhibit should be stricken.[45] Not so. Because of his presence, Fine may have personal knowledge sufficient to authenticate whether the transcript is an accurate reflection of the proceedings.[46] He does not need have personal knowledge about the events underlying the testimony to authenticate its transcript. Once depositions are authenticated, courts may rely on them in summary judgment proceedings.[47] Further, once a transcript of an adverse party designee's deposition has been authenticated, it may be used "for any purpose" in a proceeding.[48]

---

[43] D.I. 79-14, at p. 2.

[44] D.I. 88, at pp. 5-6.

[45] D.I. 88, at pp. 5-6.

[46] Fed. R. Evid. 901 (b)(1).

[47] Fed. R. Civ. P. 56(c)(1)(A).

[48] Fed. R. Civ. P. 32(a)(3) allows an adverse party to "use for any purpose the deposition of a party." Though the fight over the escrowed Tax Refund is between BMO and ICSP, the Trustee is an adverse party in this proceeding.

The purported transcript has the names and numbers of the instant case and proceeding, as well as the name, email, and telephone number of the recording service, and certification from a court reporter and notary public.[49] The identifying information lends some credibility to the authenticity of the exhibit. Further, the notary public and court reporter may be called upon to authenticate this exhibit as the transcript and its sub-exhibits as the transcript's exhibits.

The Court will not strike this exhibit.

   i.    *Sub-exhibits of M*

Fine states that the 16 sub-exhibits of Exhibit M are the exhibits of the Trustee's deposition.[50] This opinion now turns to finding means to authenticate them.

The transcript's own treatment of the documents supports the assertion that the sub-exhibits were the exhibits in Trustee's deposition. The transcript's "Exhibits Description" lists a brief description and, when available, bates stamp for each exhibit.[51] These description and stamps accurately describe and correspond to the attached sub-exhibits. Further each sub-exhibit bears the mark of a numbered and dated exhibit sticker that accurately corresponds to the transcript's description of the respective exhibit and the deposition's date. It is also worth reiterating that a court report and notary has certified that the transcript accurately reflects the deposition. This is sufficient to show

---

[49] D.I. 79-14 1, 118.

[50] D.I. 79-1, at ¶ 17.

[51] D.I. 79-14 3-4.

that the sub-exhibits are in fact the deposition's exhibits. But this alone does not authenticate them.

Three other observations attest to the authenticity of the bulk of the sub-exhibits. Most of these sub-exhibits were produced in discovery. While this is not dispositive, it is "surely probative" on the issue of authentication.[52] Second, nearly all the bates stamps belong to the Trustee. Third, in his deposition, the Trustee identified most of these documents and testified to his familiarity with them. Though the Trustee has not been able to identify or testify to all the exhibits in his depositions, to the extent that he has, his testimony satisfies the "slight" burden of authentication.

### ii.    Sub-exhibits M(1) and M(2)

Exhibit M(1) bates stamped TRUSTEE1019, 7676-7706 is LTC's tax refund application and IRS account transcript. Exhibit M(2) initial bates stamp TRUSTEE0007675 is the rest of the IRS account transcript. These statements echo the exhibits' descriptions in the transcript's exhibit list.[53] The Trustee confirmed the authenticity of both exhibits in his deposition.[54] He also confirmed that he worked to obtain and was able to understand and explain them with respect to both the Tax Refund and related tax payments.[55] He further testified to his familiarity with Exhibit M(3), the 2011 Tax Refund. Neither M(1) nor M(2) will be stricken.

---

[52] *McQueeney v. Wilmington Trust Co.*, 779 F.2d 916, 928–29 (3d Cir.1985) (production of documents in discovery is circumstantial evidence of the documents' authenticity).

[53] D.I. 79-14 3.

[54] D.I. 79-14 11:11-15:5.

[55] D.I. 79-14 16:1-28:9.

iii.    *Sub-exhibits M(3)-(4), (8)-(13), (15)-(16)*

ICSP argues that because Trustee responded to Requests for Admission by admitting to the authenticity of several of the exhibits, their authenticity has been "conclusively established" pursuant to Fed. R. Civ. P. 36(b). Exhibits at issue are M(3), M(4), M(8), M(9), M (10), M(11), M(12), M(13), M(15), and M(16). Trustee, in his responses to requests for admission, acknowledged "to the best of" his knowledge that these exhibits admissible as business records.[56]  In an email exchange with Andrew Kent, counsel for ICSP, Samuel Israel, counsel for Trustee, confirmed that such an acknowledgment "is deemed an admission for the purpose of Rule 36 of the Federal Rules of Civil Procedure."[57]

M(3) bates stamped TRUSTEE00145-00235 purports to be a corporate federal tax return for the period from May 1, 2011 to December 31, 2011. Trustee has admitted this in a Request for Admission.[58]

M(4) bates stamped TRUSTEE0000864-966 appears to be a corporate federal tax return for 2012.  ICSP states that they are identical to documents bates stamped Trustee 00723 - 00825 and admitted in ICSP's First Requests for Admission. [59] Further, "ICSP

---

[56] D.I. 79-12, at response 19 and D.I. 79-13, at response 24.

[57] D.I. 92-5; D.I. 92-6; D.I. 92-12.

[58] D.I. 79-12, at response 1. Though this exhibit was not attached to the RFA, this exclusion was permissible because its production in discovery satisfied Fed. R. Civ. P. 36(a)(2) exception that such document need not be affixed when if "has been, otherwise furnished or made available for inspection and copying."

[59] D.I. 79-12, at response 6. Though the exhibit was not attached to the RFA, this exclusion was permissible because its production in discovery satisfied Fed. R. Civ. P. 36(a)(2) exception that such document need not be affixed when if "has been, otherwise furnished or made available for inspection and copying."

anticipates that BMO will not contest that" the documents are identical.[60] Further, the Trustee's description of the first page, page 878, and of page 926 match the contents of those pages of the document.[61] The Trustee also states that the document is the tax return and he is familiar with it. This exhibit will not be stricken.

M(8), M(9), M (10), M(11), M(12), and M(13) appear to be LTC's bank statements from Fifth Third Bank for the time period April 1, 2011 through September 30, 2011. The account ends in "6750." In a Request for Admission, the Trustee has admitted to the authenticity of documents annexed as "Exhibit A", reflecting LTC's Account 6750 at Fifth Third Bank for the time period April 1, 2011 through September 30, 2011.[62] The Trustee has also testified that these documents are what they purport to be and accurately described them.[63] Unfortunately, ICSP does not append this Exhibit A to Fine's declaration. Without this, these documents can not go in as admissions. Nonetheless, the transcript authenticates them. The Court will not strike them.

Exhibits M(15) and M(16) are printouts, produced by Trustee, of debtors' ledgers. BMO argues that they should be stricken because Fine took no part in their creation or custody and therefore can not authenticate them.[64] However, Trustee – the producing party – admitted to their authenticity.[65] The Court will not strike the exhibits.

---

[60] D.I. 91, at p.14, fn3.

[61] D.I. 79-14 38-43.

[62] D.I. 79-12, at response 3.

[63] D.I. 79-14 71:23-72:24, 76:12-78:14, 78:24-80:24, 81:3-17, 83:12-84:5, 84:13-84:24.

[64] D.I. 88, at pp. 4-5.

[65] D.I. 79-12, at response 19 and 79-13, at response 24.

     *iv.*    *Sub-exhibits M(5)-(7) and M(14)*

M(5) bates stamped TRUSTEE000580 through TRUSTEE000625 purports to represent LTC and its subsidiaries' consolidated financial statements for 2011. The Trustee concurs and states that he is familiar with this.[66] These will not be stricken. M(6) bates stamped LTCU0198 through LTCU0238 purports to be LTC and its subsidiaries' consolidated financial statements for 2010. The Trustee stated that he probably saw the document, but does not remember.[67] The Court will allow ICSP to authenticate this exhibit.

M(7) purports to be an LTC Funds Flow Model bates stamped TRUSTEE0009827. It appears to be an LTC Funds Flow Model with a Trustee bates stamp. But according to the transcript, there may be some controversy over the origin of the document.[68] The Trustee stated that he has never seen this document before.[69] The Court will allow ICSP to authenticate this exhibit.

M(14) appears to be LTC's Fifth Third Bank records from September 1 through 28 of 2012. BMO argues that it should be stricken because Fine took no part in their creation or custody and therefore can not authenticate them.[70] However, the bank's record custodian has certified that they meet the business records of a regularly conducted

---

[66] D.I. 79-14 44.

[67] D.I. 79-14 60:22-23.

[68] Adv. Pro. 15-51889 D.I. 79-14 69:21, where BMO attorney David Audley indicates that it may be a Gridiron document.

[69] D.I. 79-14 71:9-10.

[70] D.I. 88, at pp. 4-5.

activity under Fed. R. Evid.  803(6).[71] Specifically, the custodian certified that that 1) the records were issued around the time of the activity by someone with knowledge or with such person's information, 2) the records were kept in the course of a regularly conducted activity, and 3) the making of such records was a regular practice.[72] This is sufficient to meet the "slight" burden that the exhibit "is what the proponent [ICSP] claims it is."[73] The Court will not strike this exhibit.

**CONCLUSION**

The Court will not strike the Declaration or the exhibits. It will allow ICSP to authenticate Exhibits: C, E, F, M(6), and M(7).  An Order will be entered.

---

[71] D.I. 92-12; *See also* Fed. R. Evid. 803(6)(D) and 902(11) for support that certification by someone with personal knowledge is sufficient for authentication.

[72] Fed. R. Evid. 803(6).

[73] Fed. R. Evid. 901(a)